UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:07-27-cr-01-Y/H |
| | ) | |
| TROY OGBURN, | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO SUPPRESS**

Before the court is Troy Ogburn's ("Ogburn") Motion to Suppress. On March 6, 2008, the court held an evidentiary hearing, wherein the court heard testimony from the following individuals: Ogburn, Federal Bureau of Investigation Task Force Officer Michael Kennedy ("TFO Kennedy"), and Evansville Police Department K-9 Officer Josh Wittmer ("Officer Wittmer"). The court, having read and reviewed Defendant's motion, the supporting and opposing briefs, and having considered the testimony of the witnesses noted above, now **DENIES** Ogburn's Motion to Suppress.

**I. Facts**

1. On August 30, 2007, at approximately 5:30 a.m., TFO Kennedy and Bureau of Alcohol and Tobacco Firearms and Explosives Special Agent Kevin Whitaker ("Special Agent Whitaker") were participating in a multi-agency drug trafficking investigation and were conducting surveillance in the 1600 block of South Elliott Street in Evansville, Indiana. At that time, they saw Ogburn and another

        individual walk out of a residence located at 1678 South Elliott Street.

2.     TFO Kennedy and Special Agent Whitaker watched as Ogburn and another individual walked to a Cadillac that was parked in front of the residence, at which time Ogburn opened the trunk of the Cadillac. Ogburn and the other individual then walked a short distance to a 1979 Chevrolet Impala which was parked behind the Cadillac. Ogburn was observed as he opened the trunk of the Impala with a set of keys[1] he had. The two men reached into the trunk of the Impala. The other individual appeared to have "something cupped in his hands." Ogburn stayed by the Impala for a short time period while the other individual got into a sport utility vehicle and left the area. Ogburn then entered the residence located at 1678 South Elliott Street.

3.     At approximately 6:00 a.m., law enforcement executed the search warrant at 1678 South Elliott Street. Ogburn and four other individuals were found inside the residence. During the course of the search of the residence, law enforcement located a plastic bag containing crack cocaine, a plastic bag containing marijuana, a cigar that had been filled with marijuana, and a digital scale.

4.     TFO Kennedy also located a set of keys under Ogburn's body.

---

[1] Ogburn testified that the keyhole to the trunk of the Impala was missing and that the trunk was therefore not accessible with a key. This testimony was corroborated by the introduction into evidence of a picture of the trunk of the Impala. *See* Defendant's Exhibit C. The fact that TFO Kennedy testified that he saw Ogburn open the trunk of the Impala with a key does not call his credibility into question. At the time TFO Kennedy saw Ogburn open the trunk, he was conducting surveillance inside a parked car a short distance away. Thus, he could have easily mistaken the manner in which Ogburn opened the trunk.

5. Ogburn was subsequently read his *Miranda* warnings by Deputy U.S. Marshal Rob Jackson ("Deputy Jackson"). Ogburn indicated he understood and agreed to speak to Deputy Jackson.

6. TFO Kennedy testified that he heard Ogburn[2] tell Deputy Jackson that neither the Impala nor the Cadillac were his; thus, he could not give consent to search the vehicles.

7. A short time later, Officer Wittmer used his drug detection dog, Brix,[3] to conduct a free air sniff of the Impala, the Cadillac, and two other vehicles located near the Impala on Elliott Street. Brix is certified to detect the odor of methamphetamine, cocaine, marijuana, and heroine.

8. Brix gave a positive alert for the presence of a controlled substance by scratching the trunk of the Impala.

9. After the positive alert by Brix, law enforcement conducted a search of the Impala. Drug Enforcement Administration Special Agent Scott Garland ("Special Agent Garland") opened the trunk and found crack cocaine and marijuana inside a tennis shoe.

---

[2] Ogburn testified that he informed Deputy Jackson that the vehicle was his prior to the search. The court finds Ogburn's testimony to be evasive and thus credits TFO Kennedy's testimony over his.

[3] Brix gave a positive alert to the presence of a controlled substance inside the Cadillac; however, no drugs were found inside that vehicle. The fact that Brix gave a false positive alert does not call his reliability into question, as Brix is certified to alert to the odor, as opposed to the actual presence of, controlled substances.

10. After the drugs were found in the trunk of the Impala, Ogburn told TFO Kennedy that the Impala did in fact belong to him and that someone else must have put the drugs inside the tennis shoe.

11. Ogburn was then arrested and later charged with possession with intent to distribute five (5) or more grams of a mixture or substance containing a detectable amount of cocaine base (a.k.a. "crack" cocaine), in violation of Title 21, United States Code Sections 841(a)(1) and 841(a)(1)(B)(iii).

## II. Discussion

### A. Standing

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978); *United States v. Torres*, 32 F.3d 225, 229 (7th Cir. 1994); *United States v. Jackson*, 189 F.3d 502, 507 (7th Cir. 1999). Thus, a defendant may move to suppress evidence obtained in violation of the Fourth Amendment only if he can demonstrate that his Fourth Amendment rights were violated by the challenged search. *Jackson*, 189 F.3d at 507-08 (citing *Torres*, 32 F.3d at 229-30).

With respect to a search of a vehicle, in order for a defendant to establish that he has standing to claim that his Fourth Amendment rights were violated, he must demonstrate that he had a legitimate expectation of privacy in the vehicle at the time of the search. *Id.* at 508. "'A legitimate expectation of privacy is an expectation actually and subjectively held by the defendant and one which society is prepared to recognize as

reasonable.'" *Id*. at 230 (quoting *United States v. Tobin*, 890 F.2d 319, 324 (11th Cir. 1989)). The defendant, as the party objecting to the search of the vehicle, bears the burden of proving a legitimate expectation of privacy in the vehicle. *Id*.

One who voluntarily disclaims and/or abandons an ownership interest in the area searched has no reasonable expectation of privacy in the area searched, and thus, has no standing to contest the legality of the search. *United States v. Whitsett*, 207 Fed.Appx. 723, 726 (7th Cir. 2006); *see also United States v. McDonald*, 100 F.3d 1320, 1327 ("Abandoned property is not subject to Fourth Amendment protection."). "Property is abandoned if the defendant's voluntary statements and conduct would lead a reasonable person in the searching officer's position to believe that the defendant had relinquished his property interests." *Whitsett*, 207 Fed.Appx. at 726; *see also McDonald*, 100 F.3d 1320, 1328-29 (7th Cir. 1996) (stating that denial of ownership, taken at face value, allows reasonable conclusion that defendant claims no possessory interest); *United States v. Quiroz-Hernandez*, 48 F.3d 858, 864 (5th Cir. 1995) ("A person has no standing to complain of a search or seizure of property that he has voluntarily abandoned.").

The Government argues that Ogburn did not have a reasonable expectation of privacy in the Impala because he denied ownership of that vehicle prior to the search. The court agrees. By disclaiming any ownership interest in the vehicle, Ogburn voluntarily abandoned his ownership interest in the Impala prior to the search, and thus, did not have a reasonable expectation of privacy in the vehicle at the time of the search. The fact that TFO Kennedy witnessed Ogburn open the trunk of the Impala earlier in the

morning does not change the court's analysis. At the time of the search of the Impala, there were four other individuals in the Elliott Street residence, any one of which could have owned the Impala, and any one of which could have given Ogburn permission to unlock the trunk of the Impala. Accordingly, the court finds that Ogburn does not have standing to object to the search of the vehicle on Fourth Amendment grounds.

### B. Search of the Impala

Even if the court were to find that Ogburn had standing to contest the validity of the search of the Impala, for the reasons explained below, the court would still deny Defendant's motion to suppress because the search was lawful.

Before law enforcement may lawfully call a canine unit, they must have a reasonable suspicion that criminal activity is afoot. *United States v. Rogers*, 387 F.3d 925, 934 n. 9 (7th Cir. 2004); *United States v. Fink*, 85 F.3d 1275, 1081-82 (7th Cir. 1996). The court finds that Ogburn's presence inside 1678 South Elliott, where the officers' execution of a lawfully-obtained search warrant revealed the presence of narcotic drugs, and TFO Kennedy's observance of what appeared to be a hand-to-hand drug transaction between Ogburn and an unidentified male at or near the trunk area of the Impala, gave law enforcement reasonable suspicion that illegal drug activity may be afoot, thus warranting the more intrusive measure of calling in a canine unit.

Once Officer Wittmer and his partner, Brix, arrived at the scene, Officer Wittmer walked Brix around the perimeter of the Impala, at which time Brix alerted to the presence of controlled substances by scratching the trunk area. A positive alert by a

certified drug detecting dog like Brix is not a search within the meaning of the Fourth Amendment, as a dog sniff "does not require entry into the car and is not designed to disclose any information other than the presence or absence of narcotics." *City of Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000). *See also Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (use of a well-trained narcotics detection dog during a lawful traffic stop does not implicate any legitimate privacy interest); *United States v. Place*, 462 U.S. 695, 707 (1983) (a dog sniff by a well-trained narcotics dog of seized luggage is not a Fourth Amendment search requiring probable cause and a search warrant). Thus, Brix's positive alert to the presence of narcotic drugs in the Impala, given the particular circumstances of this case, was not a search implicating the protections of the Fourth Amendment.

Once there was a positive alert to the presence of narcotics inside the Impala, law enforcement had probable cause to search the vehicle. *Rogers*, 387 F.3d at 934 n.9; *United States v. Ganser*, 315 F.3d 839, 844 (7th Cir. 2003). A vehicle search supported by probable cause "may extend to any part of the vehicle in which evidence or contraband might be concealed, including, of course, the trunk of the car." *United States v. Ledford*, 218 F.3d 684, 688 (7th Cir. 2000); *see also United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."). Because Brix alerted to the presence of controlled substances in the trunk of the Impala, law enforcement had probable cause to open the trunk, and look inside the tennis shoe. Accordingly, the court finds the search of the trunk of the Impala, where

narcotics were found inside a tennis shoe, was lawful.

### III. Conclusion

For the reasons explained above, the court **DENIES** Defendant's Motion to Suppress (Docket # 16).

**SO ORDERED** this  20th   day of March 2008.

                                          RICHARD L. YOUNG, JUDGE
                                          United States District Court
                                          Southern District of Indiana

Electronic Copies to:

Barry D. Glickman
UNITED STATES ATTORNEY'S OFFICE
barry.glickman@usdoj.gov

David William Lamont
LAMONT LAW OFFICE
dlaw609@aol.com